IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 04-145 |
| | ) | |
| FREDERICK COATES, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER

Conti, District Judge

Pending before the court is the motion for withdrawal of guilty plea filed by defendant

Frederick Coates ("defendant" or "Coates")(Doc. No. 71).  The court will deny the motion

because after considering and balancing the three factors for withdrawal of a guilty plea set forth

in United States v. Jones, 336 F.3d 245 (3d Cir. 2003) ("Jones II"), the court finds that defendant

did not show a fair and just reason for withdrawing his guilty plea.

***Background***

Defendant appeared before this court on January 13, 2005, to change his previous plea of

not guilty at count one of the indictment to a plea of guilty.  At the hearing, the court placed

defendant under oath and found defendant competent to plea without objection from his previous

counsel.  Transcript of January 13, 2005 Hearing ("Tr.") at 3-4.  The court further explained

defendant's constitutional and other rights, including: defendant's right to a trial by jury; his

privilege against self-incrimination; his right to participate in jury selection; the applicable

burden of proof beyond a reasonable doubt the government would be required to meet at trial;

and his right to confront, question and cross-examine witnesses at trial.  Tr. at 5-8.  The court

also explained that if defendant entered a guilty plea, he would waive all of those rights.  Id. at 8.

Defendant indicated he understood the effect of a guilty plea and stated to the court that he still

wanted to plead guilty.  Id. at 8.

The court then explained that the United States Sentencing Guidelines are advisory and

may be applied to any sentence the court would impose at count 1.  Id. at 9.  The court informed

defendant that it would be unable to determine defendant's guideline sentence range until after a

presentence report was prepared by the United States Probation Officer, and until after both

defendant and the government had an opportunity to respond to the facts contained in that report.

Id.  The court instructed Coates that even if the counsel's advice to him regarding the applicable

advisory guidelines range was mistaken, he would still be bound by his guilty plea.  Id. at 9-10.

> THE COURT:        And do you also understand that if your counsel's advice to you on
> the guidelines are mistaken because of facts that later come out in
> the presentence investigation report, you will still be bound by
> your plea?
>
> MR. COATES:       Yes, your honor.

Id. at 9-10.

The court also asked defendant the following question: "Do you understand that if the

sentence imposed is more severe than you expected, you will still be bound by your plea and will

not be able to withdraw?"  Id. at 10.  Defendant replied, "Yes, your honor."  Id.  After informing

defendant that a presentence report was necessary to determine his Guidelines range, the court

advised defendant of the maximum penalties with respect to count 1 of the indictment.  Id. at 14.

The court stated with respect to count 1 that the maximum penalty was a term of imprisonment

of not more than 20 years imprisonment, a term of supervised release of at least 3 years, and a

fine of $1,000,000.  Id. at 14.

Defendant further testified no one had threatened or coerced him in any way to plead guilty, and that, with respect to the terms of his written plea agreement with the government, no promises had been made to induce him to plead guilty.  Id. at 15-16, 24.

The government then summarized the government's evidence as to count 1, stating that the charges against Coates were a result of a multi-agency investigation of the Michael Good ("Good") and Lamont Washington ("Washington") drug trafficking organizations.  Id. at 17. Through the use of wiretaps on both Good's and Washington's cellular telephones, the case agents were able to determine that Good's and Washington's organizations were distributing large quantities of heroin on Pittsburgh's North Side.  Id. at 18.  The government explained that count 1 of the indictment charges Coates with participation in a conspiracy to distribute heroin from January 12, 2003, to February 20, 2003.  Id. at 18.  Through the use of wiretaps on Washington's cellular telephone, numerous calls were intercepted between Coates and Washington.  Id. at 18.  The government stated that, at trial, it would call witnesses to testify that Washington and Coates were conversing about drug transactions during the intercepted conversations.  Id.  The government also stated that witness would testify that Coates obtained quantities of heroin from Washington for distribution.  Id.  The government referred specifically to telephone calls on February 5, 2003, at 12:40 p.m. and February 17, 2003, at 2:06 p.m. between Coates and Washington in which drug transactions were discussed.  Id. at 18-19.   In addition, the government noted that further discussions between Washington and Coates, on February 17, 2003, at 4:22 p.m. and February 18, 2003, at 4:54 p.m., reveal that the two were meeting to conduct drug transactions.  Id. at 19.

The court entered into the following exchange with defendant regarding whether he had received any promises or predictions with respect to the actual sentence he would receive:

| | |
|---|---|
| THE COURT: | Mr. Coates, has anyone made a promise other than the promises that have been made in the plea agreement which have induced you to plead guilty? |
| MR. COATES: | No, Your Honor. |
| THE COURT: | Has anyone made a prediction or promise to you as to what your actual sentence will be other than what I have told you about the maximum sentence? |
| MR. COATES: | No, Your Honor. |
| THE COURT: | Has anything I've said here today other than what I told you about the maximum sentence suggested to you what your actual sentence will be?  Is there anything I've said today--- |
| MR. COATES: | No. |
| THE COURT: | –other than what I told you about the maximum sentence? |
| MR. COATES: | *No, there isn't; there's nothing definite.* |
| THE COURT: | Have you been instructed, Mr. Coates, by the Government attorney or your attorney or anyone else to respond untruthfully to any question about a promised sentence? |
| MR. COATES: | Say that again. |
| THE COURT: | Has anyone instructed you, whether it's the Government attorney, your attorney, or anyone else, to respond untruthfully to any question that I raised about a promised sentence? |
| MR. COATES: | No, Your Honor.  No, Your Honor. |

Id. at 24-25 (emphasis added).

Immediately after the above exchange, the court asked and defendant responded to the

following question:

| | |
|---|---|
| THE COURT: | Mr. Coates, did you conspire to distribute and possess with the intent to distribute one hundred grams–excuse me, at least 80 grams but no more than one hundred grams, but less than a hundred grams, or heroin, a Schedule I |

4

controlled substance, in violation of Title 1-- Title 21
United States Code Section 846, as set forth in Count 1 of
the indictment as amended which has been filed at
Criminal No. 04-145?[1]

MR. COATES:        Yes, Your Honor.

Id. at 25.

After the attorney for the government summarized Coates's involvement in the

conspiracy, the court asked defendant whether he agreed with the prosecution's summary of

what he did.  Coates indicated to the court that he agreed with the government's summary of his

conduct and stated that he still wanted to plead guilty.  Id. at 20.  Later, the court entered a

judgment of guilty on the record, based upon the government's factual proffer and defendant's

concurrence in that proffer.  The court stated:

THE COURT:        Mr. Coates, since you acknowledge that you are, in fact,
guilty as charged in Count 1 as amended, since you know
your right to a trial, since you know what the maximum
possible penalty is, and since you are voluntarily pleading
guilty, the court accepts your guilty plea and hereby enters
a judgment of guilty on your plea.

Id. at 26.

---

[1]The original indictment in this case charged defendant with conspiracy to distribute and
possess with the intent to distribute 100 grams or more of heroin, a Schedule I controlled
substance, in violation of 21 U.S.C. § 846 and 841(b)(1)(B).  At the plea hearing, the court was
informed that the parties agreed to stipulate that defendant was responsible for at least 80, but
less than 100 grams of heroin.  Due to the fact that such a stipulation would take plaintiff out of
the statutory mandatory minimum sentence of not less than 5 years imprisonment, as proscribed
in 21 U.S.C. § 841(b)(1)(B), the government made an oral motion to amend the indictment to
charge defendant with conspiracy to distribute and possess with the intent to distribute at least
80, but less than 100 grams of heroin in violation of 21 U.S.C. § 846 and 841(b)(1)(C).  The
defendant did not object to the motion and the court informed the defendant regarding the
offenses in the amended indictment, as well as the applicable penalties he would face after
changing his plea.

Coates was scheduled to be sentenced by the court on April 15, 2005.  On March 29, 2005, the sentencing was re-scheduled for June 10, 2005.  The court issued its tentative findings and rulings concerning the defendant's advisory guidelines range on June 10, 2005.  In its tentative findings, the court found that Coates, due to the fact that he was over 18 years of age at the time he committed the instant offense, that the instant offense is a felony controlled substance offense, and that he has two prior convictions for crimes of violence, is a career offender within the meaning of U.S.S.G. § 4B1.1.  Defendant's counsel stated at the sentencing hearing that defendant would never have changed his plea to guilty if he had known that he would be classified as a career offender.  As a result of the court's ruling, defendant requested that the sentencing hearing be continued.  A sentencing hearing was then held on August 1, 2005.  At that hearing, defendant announced his intention to file a motion to withdraw his guilty plea.  The court set a briefing schedule and a hearing on defendant's motion to withdraw his guilty plea was scheduled for September 13, 2005.  Defendant filed his motion on August 17, 2005.  The government responded on September 2, 2005.  A hearing on the defendant's motion to withdraw his guilty plea was held on September 13, 2005.

At the hearing, defendant did not testify and he called no witnesses on his behalf.  Rather, defense counsel argued only that the court had misapplied the applicable law in determining whether defendant was a career offender within the meaning of U.S.S.G. § 4B1.1[2].  In arguing

---

[2]The court notes that the finding of the applicability of U.S.S.G. § 4B1.1 is only one factor the court will consider in sentencing defendant.  As stated in the court's tentative findings: "In light of the United States Supreme Court's holding in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2004), the United States Sentencing Guidelines are advisory and no longer mandatory in the federal courts.  The court is directed to sentence criminal defendants in accordance with the factors set forth in 18 U.S.C. § 3553(a).  One of the factors enumerated in section 3553(a) that the court is required to consider is "the kinds of sentence and the sentencing range established for under the United States Sentencing Guidelines."  18 U.S.C. § 3553(a)(4).

his motion, defense counsel asserted that the Jones II framework for the withdrawal of a guilty

plea is flawed in that it requires the defendant to assert his innocence.  Transcript of September

13, 2005 Hearing ("Tr.") at 4.  Defense counsel argued that such a requirement violates a

defendant's right under the Fifth Amendment to the United States Constitution.  Defense counsel

also asserted that defendant's reason for withdrawal of his guilty plea is due to the severity of

defendant's potential sentence.  "That's the compelling reasons that we're withdrawing–the

reason why we move to withdraw the plea.  His sentence jumped Your Honor from 47–46 to 57

months to 151 to 188 months."  Tr. at 6.  The court denied the defendant's motion on the record.

Due to defendant's wish to appeal that ruling, the court issues this written opinion.

*Analysis*

Rule 11(d) of the Federal Rules of Criminal Procedure requires a criminal

defendant to show a "fair and just reason" in order to withdraw a guilty plea previously accepted

by the court.  In determining whether a "fair and just reason" has been established, the court

must examine each of the following three factors: (1) whether defendant asserts his innocence;

(2) the strength of defendant's reasons for withdrawing the plea; and (3) whether the government

would be prejudiced by the withdrawal.  Jones II, 336 F.3d at 252; see also, Brown, 250 F.3d at

815; Huff, 873 F.2d at 711.[3]  The factors set forth in Jones II are not mandatory elements that a

---

In fact, the United States Supreme Court stated that "[t]he district courts, while not bound to
apply the Guidelines, must consult those Guidelines and take them into account when
sentencing."  Booker, 543 U.S.  at –, 125 S.Ct. at 767.  Accordingly, the court's tentative
findings reflect the advisory Guidelines range for defendant's offense as set forth by the United
States Sentencing Guidelines.  At the time of sentencing, the court will impose the defendant's
sentence in consideration of all of the factors set forth under section 3553(a)."  United States v.
Coates, No. 04-145, slip op. at 1-2 (W.D. Pa. June 13, 2005).

[3]The analysis in this opinion is derived from this court's opinion in United States v.
Wilder, No. 03-72 (W.D. Pa. Sept. 15, 2005).

defendant must establish in order to withdraw a guilty plea; rather, the district court must analyze the factors *in toto* to reach its conclusion as to whether the defendant has set forth a "fair and just" reason to withdraw the guilty plea.  United States v. Wilder, 134 Fed. Appx. 527 (3d Cir. 2005) (district court abused its discretion by considering each of the Jones II factors mandatory).  The burden of establishing a sufficient basis to withdraw the guilty plea is on the defendant, see United States v. Hyde, 520 U.S. 670, 676-77 (1997), and that burden is "substantial."  Jones II, 336 F.3d at 252.  This heavy burden reflects the notion that "[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's whim."  Brown, 250 F.3d at 815.

Furthermore, because Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires the court to be satisfied as to the defendant's guilt before accepting a guilty plea, in order to demonstrate a "fair and just reason" to withdraw the plea the "defendant must . . . not only reassert innocence, but *give sufficient reasons to explain why contradictory positions were taken before the district court* and why permission should be given to withdraw the guilty plea and reclaim the right to trial."  United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992) (emphasis added).  Factors one and two are not in dispute.  Defendant did not assert his innocence at the hearing.  "The defendant has made clear that the first factor under the Jones test of whether the defendant asserts his innocence is not going to be asserted here, so, really, the whole case in terms of the issue before the court will turn on the strength of the defendant's reasons for withdrawing the plea."  Tr. at 9.  The government stated during the hearing on defendant's motion to withdraw his guilty plea that it would suffer no prejudice if the defendant were permitted to withdraw his guilty plea.  Tr. at 9.  The issue before this court, therefore,

8

concerns the second factor – the strength of defendant's reasons for withdrawing the plea – and the need to consider the factors "*in toto*."

In order to show ineffective assistance of counsel, defendant must satisfy the two-prong test set forth in Strickland v.Washington, 466 U.S. 668 (1984), which requires a showing that 1) the "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," Id. at 687, and 2) "that the deficient performance prejudiced the defense." Id.; Jones II, 336 F.3d at 254 (second prong requires showing that the defendant suffered "'sufficient prejudice' from his counsel's errors"). "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Strickland, 466 U.S. at 696.

An erroneous sentencing calculation by a defendant's counsel does not in and of itself constitute ineffective assistance of counsel under Strickland. In Masciola v. United States, 469 F.2d 1057 (3d Cir. 1972), the court of appeals noted that "[a]n erroneous prediction of sentence by counsel does not render a guilty plea involuntary." Id. at 1059. The court of appeals ruled:

> When the pleading proceedings record shows clearly that defendant was questioned as to the voluntariness of his plea, there was no need for an evidentiary hearing to reconsider the voluntariness issue when the only claim is that counsel inaccurately predicted the sentence . . . . Defendant acknowledged when pleading that he was aware that he could be sentenced to five years.

Id. The "defendant's understanding of the consequences of a guilty plea" was central to the court of appeals' decision to affirm the district court's denial, among other things, of permission to withdraw a guilty plea. Id.

9

In Nwachia v. United States, 891 F.Supp. 189 (D.N.J. 1995) (under 28 U.S.C. § 2255, defendant sought to vacate his sentence to permit him to enter a not guilty plea), the court considered the defendant's argument that his counsel was ineffective at the time the defendant pled guilty by reason of his counsel's failure to inform the defendant "that he would be sentenced as a career offender under the Sentencing Guidelines." Id. at 191. Defendant asserted his attorney told him his sentence would likely be "three-and-one-half to four years in prison," which was significantly less than the 210 months to which he was actually sentenced. The court rejected the defendant's argument because the colloquy at his plea hearing established that the defendant could not satisfy the first prong of the Strickland test. The court stated:

> Given the clear warning that the court could not know in advance
> what the eventual Guideline range would be until a presentence
> report was prepared, [and] the fact that [the defendant] was
> informed that he faced a maximum sentence of 40 years in prison .
> . ., it is abundantly clear that [the defendant] has failed to
> demonstrate that his counsel's representation "fell below an
> objective standard of reasonableness."

Id. at 199.

In Brown v. United States, 75 F.Supp.2d 345 (D.N.J. 1999) (considered motion under 28 U.S.C. § 2255 to vacate a defendant's sentence entered after he entered a plea of guilty), however, the court recognized that an attorney's failure to warn his client that he might qualify as a career offender would arguably satisfy the first prong of the Strickland test. "It is deficient performance for an attorney to fail to provide good-faith advice about the sentencing consequences of a guilty plea." Id. at 355. The court further recognized that the second prong of the Strickland test may not be established by that failure in the context where an adequate guilty plea hearing is held. The court stated:

10

> It has long been settled as a general rule that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel . . . .

> The rational is that the <u>Rule ll</u> colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel.

<u>Id.</u> at 355.

The court, however, noted that the United States Court of Appeals for the Third Circuit has not directly addressed this matter in the context where erroneous advice is given about a defendant's career offender status and that other circuits are split on this issue. <u>Id.</u> at 356. The court reviewed the decision in <u>United States v. Foster</u>, 68 F.3d 86, 87 (4th Cir. 1995), which involved a situation where defense counsel assured his client he would not be sentenced as a career offender and then his client was sentenced based upon his career offender status. In <u>Foster</u> the court of appeals found the defendant could not have been prejudiced by that erroneous advice. It stated:

> We have no reason to suspect that [the defendant's] attorney's performance fell below an objective standard of reasonableness. However, we do not reach this question because [the defendant] was clearly not prejudiced by any misstatements made by his attorney . . . . [A]ny misinformation [the defendant] may have received from his attorney was corrected by the trial court at the <u>Rule 11</u> hearing, and thus [the defendant] was not prejudiced . . . . Therefore, if the trial court properly informed [the defendant] of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him.

11

Id. at 87-88 (quoted in Brown, 75 F.Supp.2d at 356-57).

In Brown, the district court recognized that the United States Court of Appeals for the Ninth Circuit did not reach the same conclusion as Foster. Brown, 75 F.Supp.2d at 357. In Risher v. United States, 992 F.2d 982 (9th Cir. 1993), the court found that the failure of a counsel to advise his client of possible career offender status satisfies Strickland's first prong and that a defendant is not precluded from demonstrating prejudice even if a proper guilty plea hearing is held. Although the court in Brown recognized the split among the circuits and noted that it believed that the United States Court of Appeal for the Third Circuit might follow Risher, it did not resolve the conflict and decided the issue on other grounds.

In Rodriquez-Amador v. United States, No. Cr. A. 95-072-SLR, 2001 WL 1104676 (D. Del. Sept. 17, 2001), the district court dealt with a somewhat analogous issue and resolved the matter as the court did in Foster. In Rodriquez-Amador, the defendant argued his counsel was ineffective because the counsel told the defendant he would receive a three-point downward departure, but the court did not grant the departure. The erroneous advice of counsel was found not to prejudice the defendant by reason of the adequacy of the guilty plea 11 hearing. "The Rule 11 colloquy, during which the defendant is informed of the maximum possible sentence and fines for the offense to which he intends to plead guilty, eliminates any prejudice that might arguably attach to counsel's erroneous sentencing prediction." Id. at *4-5.

This court agrees with the analysis in Brown with respect to the first prong of the Strickland test and concludes that the failure of defendant's previous counsel to advise him about the possibility that he might be classified as a career offender was deficient advice that was below the acceptable standard for a criminal defense attorney in federal court. Defendant satisfied the first prong of the Strickland analysis.

The second prong requires the court to determine if the deficient performance of defendant's previous counsel "prejudiced the defense." Strickland, 466 U.S. at 687. In this respect, defendant's testimony at the guilty plea hearing is instructive. Defendant appeared before this court on January 13, 2005, to change his previous plea of not guilty to a plea of guilty. At the hearing, the court placed defendant under oath and found defendant competent to plea without objection from his counsel. The court further explained defendant's rights, including: defendant's right to a trial by jury; his privilege against self-incrimination; his right to participate in jury selection; the applicable burden of proof beyond a reasonable doubt the government would be required to meet at trial; and his right to confront, question and cross-examine witnesses at trial. The court also explained that if defendant entered a guilty plea, he would waive all of those rights. Defendant indicated he understood the effect of a guilty plea and stated to the court that he still wanted to plead guilty.

The court also explained that the United States Sentencing Guidelines would apply to any sentence imposed at count 1. The court informed the defendant that it would be unable to determine defendant's guideline sentence range until after a presentence report was prepared by the United States Probation Officer, and until after both the defendant and the government had an opportunity to respond to the facts contained in that report. After informing defendant that a presentence report was necessary to calculate his Guideline range, the court reviewed the maximum penalties with respect to count 1 of the Indictment. The court asked defendant if he understood that, even if his defense counsel made an error in determining his potential advisory guidelines range, he would still be bound by his guilty plea. Defendant replied, "Yes, your honor."

13

The court asked defendant the following question: "Mr. Coates, do you understand that if the sentence imposed is more severe than you expected, you will still be bound by your plea and will not be able to withdraw?"  Defendant replied, "Yes, your honor." Defendant also stated that he understood everything the court stated to him, including the maximum penalties for his offenss.  Defendant further testified no one had threatened or coerced him in any way to plead guilty, and that no promises or predictions had been made with respect to his actual sentence other than what he had been told regarding the maximum penalties. Coates also agreed with the government's summary of the facts giving rise to the offense to which he plead guilty.

Under those circumstances, Coates cannot satisfy the second prong because he is unable to demonstrate sufficient prejudice.  He was competent; he understood the maximum penalties he could receive at the change of plea hearing; he understood that the Sentencing Guidelines range could not be determined until after the presentence report had been prepared; and he answered "no" when asked whether anyone made any prediction or promise as to what his actual sentence would be.

During the guilty plea hearing it was clear that defendant understood the consequences of his plea and that his plea was voluntary.  See Masciola v. United States, 469 F.2d 1057 (3d Cir. 1972).  The plea colloquy and defendant's answers support the conclusion that the attorney's erroneous advice was not prejudicial.  See Rodriquez-Amadour, 2001 WL 1104676 at *4-5; see also Foster, 68 F.3d at 87-88.  Under the circumstances of this case, the court concludes that defendant did not satisfy the second prong of the Strickland test, and, thus, defendant did not prove ineffectiveness of counsel.  The strength of defendant's reason for withdrawing his guilty plea was weak.

14

After considering and balancing the three factors set forth in <u>Jones II</u> for withdrawal of a guilty plea, the court will not grant defendant's renewed motion to withdraw his guilty plea.  Here, the only factor which weighed in defendant's favor was the third factor – lack of prejudice to government.  Balancing that  factor against the failure of defendant to assert meaningfully his innocence and the weakness of his reason for withdrawing his guilty plea, the court determines that defendant did not show a fair and just reason for withdrawing his guilty plea.

Even if defendant was found to have proven that his counsel was ineffective, thereby satisfying the second <u>Jones II</u> factor by demonstrating the strength of his reason for withdrawing his guilty plea, this court, after considering and balancing all three factors, would still find that defendant did not show a fair and just reason for withdrawing his guilty plea.  The failure of defendant to assert his innocence meaningfully is compelling and weighs heavily in the balancing of the factors.  At the guilty plea hearing, the defendant admitted he committed the offenses to which he pled guilty.  He also acknowledged his understanding of the consequences of his guilty plea at the guilty plea hearing.  Specifically, he knew that the actual sentence would only be determined after the presentence report was prepared and that no prediction as to the actual sentence, other than the maximum penalties, was made.  Under those circumstances the factors weigh against permitting defendant to withdraw his guilty plea.  A fair and just reason for withdrawal of the guilty plea was not shown by defendant.

### *Conclusion*

After considering and balancing the factors set forth in <u>Jones II</u>, this court finds the first factor relating to assertion of innocence was compelling and weighs heavily in the balancing of the factors with respect to withdrawal of defendant's guilty plea because the

15

strength of the evidence concerning defendant's guilt was strong and defendant failed to make any meaningful showing that he was innocent.  As noted above, an attorney's wrongful calculation under the Sentencing Guidelines alone is insufficient as a strength of reason for withdrawal when, as in this case, an adequate guilty plea hearing is held.  Considering and balancing the factors together, the court finds that defendant failed to meet his burden to demonstrate a "fair and just" reason to withdraw his guilty plea.

Defendant's motion to withdraw his guilty plea will be **DENIED**.  (Doc. No. 71). The court will schedule a hearing to sentence the defendant pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005).

By the court,


<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
United States District Judge

Dated: December 16, 2005

cc: Counsel of Record